In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-07-00335-CR


____________________



PERRY WAYNE RUSSELL, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law No. 1


Montgomery County, Texas


Trial Cause No. 04-199532






 MEMORANDUM TO CLERK


 You are directed to make the following corrections in the Opinion dated May 13,
2009:

 On page 6, on the sixth and seventh lines from the top, change "overruled on other
grounds by Hammond v. State, 46 S.W.3d 888, 893 (2001)" to "overruled in part on other
grounds by Hammock v. State, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001)."

 You will give notice of the correction of the original opinion by sending a copy of the
corrected page 6, accompanied by this memorandum, to all interested parties who received
a copy of the original opinion.

 Entered this the 18th day of September, 2009.

 

 PER CURIAM

In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-00335-CR


____________________



PERRY WAYNE RUSSELL, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law No. 1


Montgomery County, Texas


Trial Cause No. 04-199532






OPINION



 A jury found Perry Wayne Russell guilty of the misdemeanor offense of driving while
intoxicated. See Tex. Pen. Code Ann. § 49.04(b) (Vernon 2003). In his appeal, Russell
contends the trial court erred in admitting a videotape and a police report into evidence, in
overruling his objection to the State's closing jury argument, in failing to properly limit the
testimony the jury was allowed to review in response to a request the jury made during its
deliberations, and in rendering a judgment based on factually insufficient evidence. With
respect to these issues, we find no reversible error and we affirm the judgment.



Videotape


 In issue one, Russell complains about the trial court's admission, over his objection,
of portions of a videotape in which an unidentified emergency medical technician, called to
the scene by the arresting officer, asked Russell for permission to check his blood sugar. In
response, Russell replied: "No, I'm okay." Russell argues that admitting this testimony
violated his right under the Confrontation Clause of the Sixth Amendment that provides: "In
all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the
witnesses against him[.]" U.S. Const. amend. VI.

 To resolve the issue, we must first decide whether the contested portions of the
videotape objectively are "testimonial." Appeals courts review de novo the constitutional
question of whether a statement is testimonial or non-testimonial. Wall v. State, 184 S.W.3d
730, 742 (Tex. Crim. App. 2006). If not considered "testimonial," these videotape portions
are not subject to the restrictions of the Sixth Amendment's Confrontation Clause. Davis v.
Washington, 547 U.S. 813, 824, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

 In Davis, the United States Supreme Court held that the Confrontation Clause did not
preclude the admission of questions and answers made during the course of a telephone call
by a person requesting assistance to resolve an ongoing emergency, commonly called a 911
call. Id. at 828-29. In reaching its conclusion that the 911 call was non-testimonial, the
Supreme Court noted: (1) the caller spoke about events as they actually occurred in contrast
to describing past events; (2) the caller faced an ongoing emergency; (3) the statements
elicited in the call were directed at resolving the ongoing emergency, in contrast to questions
that sought to investigate what had happened in the past; and finally, (4) the level of the
formality of the interview differed from a formal interview in an environment where a caller
was no longer confronted by the emergency. Id. at 827. Under these circumstances, the
Supreme Court concluded that the caller "simply was not acting as a witness; she was not
testifying." Id. at 828. 

 In Russell's case, the EMT's questions sought permission to evaluate Russell's current
medical condition; thus, like Davis, the discussion between Russell and the EMT concerned
the present and not the past. Russell's response to the EMT's question occurred during the
EMT's efforts to assess whether the call for assistance required further medical treatment;
thus, in a sense, the emergency was ongoing. The EMT's questions were not directed at
investigating crime; instead, his questions and Russell's responses were intended to resolve
the officer's call for medical assistance. Finally, none of the formalities typical of a police
officer's more formal investigatory interview are present. For example, there were no
structured questions to investigate the crime involved, nor was Russell removed to a safer
location before he was asked to respond to the EMT's questions. 

 Under these circumstance, from an objective point of view, the contested evidence
was not "testimonial" within the meaning of the Confrontation Clause. Our conclusion finds
additional support in a case decided by the Fourteenth Court of Appeals prior to Davis. In
Hudson v. State, 179 S.W.3d 731, 737-38 (Tex. App.-Houston [14th Dist.] 2005, no pet.),
the Fourteenth Court reasoned that statements made to officers and an EMT were not
testimonial because they were made during the initial assessment and securing of a crime
scene.

 Based on Davis, we conclude that the express or implicit statements by the EMT, who
was assessing Russell's medical condition, were not "testimonial" within the meaning of the
Confrontation Clause. Furthermore, Russell's statement that he was "okay" was videotaped,
Russell did not claim the videotape failed to accurately record the event, and there is no
argument that the trial court erred because the tape depicted Russell's response. Therefore,
we hold that the trial court did not err in admitting it. We overrule issue one.

Closing Argument


 In issue two, Russell argues that the prosecutor's argument was improper and that the
trial court erred in overruling Russell's objection. In reply, the State argues that the argument
constituted a proper plea for law enforcement. Alternatively, the State argues that if the
argument is determined to have been improper, it was harmless error.

 During the guilt-innocence phase of closing argument, the prosecutor's argument
included the following:

 [State]: Ladies and gentlemen, I must prove this case beyond a
reasonable doubt. The law provides that you make reasonable
inferences from the evidence presented here at trial today. Is it
reasonable to conclude Kristy Davis, Corey Stanley, [or] Randy
Gagliano['s] [knowledge] about how to treat diabetes is wrong?
Is it reasonable to conclude that the only people present at the
scene saw no evidence of hypoglycemia and one hundred
percent evidence of intoxication? Yes. It is reasonable to
conclude that Dr. Gary Wimbish came to the conclusion that the
Defendant was in the hypoglycemic episode because he was
paid $2,000 to come here and tell you that he was? Absolutely. 
Because that's what he does. It's his job. It is your obligation
to the people of the State of Texas to punish the people who
have done wrong. 


 [Defense]: Judge, I object. This is the guilty/innocence portion of the trial
and I don't believe the jury has anything to do with punishment,
so I would ask you to instruct the jury that's improper.


 [Judge]: Overruled.


 [State]: It is your job to punish the people in this county who do wrong. 
And today I am standing here before you saying that there is
overwhelming evidence from the videotape alone - -


 [Judge]: Time.


 [State]: - - that the Defendant has done wrong. 

 

 Usually, proper jury argument "falls within one of four general areas: (1) summation
of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of
opposing counsel; and (4) plea for law enforcement." Brown v. State, 270 S.W.3d 564, 570
(Tex. Crim. App. 2008). The State does not argue that the prosecutor's plea for punishment
constituted a summation, a reasonable deduction from the evidence, or that the prosecutor
made the argument in answer to Russell's argument. Instead, the State contends that the
prosecutor's argument was a proper plea for law enforcement. 

 Although it is arguable that the jury understood the prosecutor's argument as a request
that it enforce the law, at this stage of the proceeding, a relevant argument for law
enforcement would have emphasized the jury's obligation to convict persons determined
guilty beyond a reasonable doubt. See Cherry v. State, 507 S.W.2d 549, 549 (Tex. Crim.
App. 1974) (During the guilt-innocence phase of the trial, appealing to the jury that its job
is to determine punishment is "a totally improper line of argument to pursue at the
guilt/innocence stage of the proceedings."); see also Garcia v. State, 887 S.W.2d 862, 877
(Tex. Crim. App. 1994) ("Punishment may not be appropriately discussed by either side until
and unless the defendant is convicted, i.e., at the punishment phase."), overruled in part on
other grounds by Hammock v. State, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001). 

 Consequently, we are not persuaded that a plea for proper law enforcement permits
an argument suggesting an obligation-to punish-that the jury did not yet have. The argument
also risks being interpreted by jurors as a request to punish a defendant for wrongdoing even
if the State failed to meet its burden of proving guilt beyond a reasonable doubt. Because
Russell's guilt had not yet been established, the argument about the jury's obligation to
punish was premature. We hold the argument to have been improper in this context. 

 Appellate courts generally apply the harm standard for nonconstitutional error to 
improper comments made during closing argument. Martinez v. State, 17 S.W.3d 677, 692 
(Tex. Crim. App. 2000) (citing Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App.
1998)) ("Mosley's holding suggests that most comments that fall outside the areas of
permissible argument will be considered to be error of the nonconstitutional variety."). 
Under the Texas Rules of Appellate Procedure, nonconstitutional error "that does not affect
substantial rights must be disregarded." Tex. R. App. P. 44.2(b). The determination of harm
from nonconstitutional error related to improper argument requires that the appellate court
balance "the following three factors: (1) severity of the misconduct (prejudicial effect), (2)
curative measures, (3) the certainty of conviction absent the misconduct." Martinez, 17
S.W.3d at 692-93. We apply the nonconstitutional harm analysis to the complaint made here.

 In this case, the prosecutor's comments appear during her rebuttal to the arguments
made by Russell's attorney and come at the end of her argument where she summarized the
evidence. During the prosecutor's rebuttal, the comments in issue follow shortly after she
expressly explained that she was required to prove the State's case beyond a reasonable doubt
and that reasonable inferences from the evidence would allow the jury to conclude that the
State had met that burden. Thus, the argument, when placed in context, does not appear
intended as a request that the jury disregard the State's burden of proof or that it convict
simply for "wrongdoing." The comments, in context, likely did not suggest to a reasonable
juror that the State believed that Russell needed punishment for his "wrongdoing" regardless
of the strength of the evidence. Viewing the prosecutor's closing argument as a whole, we
cannot conclude that it represents a willful and calculated attempt to deprive Russell of his
right to a fair trial. 

 There was no curative instruction immediately following the objectionable argument
since the trial court overruled the defendant's objection. However, immediately before the
closing arguments commenced, the trial judge instructed the jury that comments by the
attorneys did not constitute testimony and that their comments must not be considered as
evidence. Thus, the trial court's instructions reduced any potential that the argument had to
harm Russell's right to a fair trial.

 Additionally, after the trial court overruled Russell's original objection, the prosecutor
repeated an almost identical argument, and Russell lodged no additional objection. The
failure to object to similar improper arguments is an additional factor in determining whether
an improper argument requires reversal. Lucero v. State, 246 S.W.3d 86, 102 (Tex. Crim.
App. 2008). 

 The impermissible argument was not extensive. The prosecutor's suggestion that
jurors should punish those guilty of wrongdoing constituted only a small portion of her
argument, which largely focused on the evidence that had been introduced during the trial. 
It is fair to assume that the jury likely believed that the prosecutor thought that Russell was
guilty of the crime charged and therefore, the argument that wrongdoers should be punished
would not have confused them about their task at hand, which was to determine if Russell
was guilty of driving while intoxicated.

 Finally, even if the improper argument had not been made, we firmly believe the jury
would have convicted Russell of driving while intoxicated. During the trial, Russell did not
contend that his faculties were unimpaired; instead, he claimed that the signs he exhibited
were explained by his diabetes symptoms. The jury rejected that explanation. Having
reviewed the record as a whole, we hold that the portions of the prosecutor's argument to
which Russell objected did not affect Russell's substantial rights. Consequently, we overrule
issue two. 

Jury's Request and Subsequent Review of Russell's Testimony 


 In issue three, Russell argues that the trial court supplied the jury with testimony that
was not responsive to its request to review "the testimony of Perry Russell about his drinking
habits in the year/months prior to August 8, 2004." Russell asserts thus that the trial court
violated article 36.28 of the Texas Code of Criminal Procedure, which provides, in relevant
part:

 In the trial of a criminal case in a court of record, if the jury disagree as to the
statement of any witness they may, upon applying to the court, have read to
them from the court reporter's notes that part of such witness testimony or the
particular point in dispute, and no other . . . ." 


Tex. Code Crim. Proc. Ann. art. 36.28 (Vernon 2006).


 Russell argues the trial court should have limited the testimony about his drinking
habits to the testimony responsive to the period between August 8, 2003 and August 8, 2004. 
Specifically, Russell complains that the trial judge allowed the jury to review his trial
testimony that he probably became intoxicated after five or six drinks, and his testimony
approximating that in the past five years he had been intoxicated on possibly three occasions. 
Russell argues that by including his response about the five-year time frame, the trial court
provided the jury with testimony that was outside the time period defined by the jury's
question. He also argues that his testimony concerning the number of drinks required for him
to become intoxicated was extremely broad and not limited to his drinking habits between
August 2003 and August 2004.

 We disagree that the jury's question imposed a strict one-year time frame on the
information the jury desired to review. Instead, the trial court reasonably interpreted the term
"year/months" as a request to allow the jury to review all of the testimony related to Russell's
drinking habits before August 8, 2004. To the extent that the trial court provided the jury
with testimony about Russell's drinking habits on dates prior to August 8, 2004, the trial
court's interpretation of the jury's request was reasonable. We hold that the trial court's
decision to provide the jury with testimony on Russell's drinking prior to August 8, 2004, did
not constitute an abuse of the trial court's discretion.

 Still, it remains arguable that some of the testimony the trial court provided to the jury
included testimony relevant to Russell's drinking habits during periods after August 8, 2004. 
The case was tried in February 2007; so Russell's testimony that he had been intoxicated
approximately three times in the last five years might have involved incidents when he
became intoxicated on a date after August 2004. In addition, Russell did not provide dates
for the occasions when he had five or six drinks and became intoxicated; therefore, this
testimony possibly involved an incident after August 8, 2004. 

 The degree to which the testimony possibly exceeded the scope of the jury's request
was minimal, and we hold that the surplus, if any, was not harmful. The scope of the jury's
question generally reflects the jury's desire to review testimony about Russell's drinking
habits. Because Russell did not provide specific dates when responding to questions about
his drinking habits, the record is ambiguous about whether any of the specific instances of
drinking to which Russell may have been referring in his testimony had actually occurred on
dates after August 2004. 

 To reverse the trial court's judgment, Russell is required to show that a violation of
article 36.28 in the admission of testimony was harmful. See Howell v. State, 175 S.W.3d
786, 792 (Tex. Crim. App. 2005); Brown v. State, 870 S.W.2d 53, 55 (Tex. Crim. App.
1994). In this appeal, Russell argues that he was harmed because providing his testimony
to the jury "gave the jury an opportunity to question whether or not he generally knew if he
was intoxicated." Russell testified during the trial that he drank only one beer on the night
of the arrest and that it took five or six drinks to make him intoxicated. We disagree that
Russell's testimony tends to show that he was unaware of his tolerance for alcohol; therefore,
we are unpersuaded by his argument that he was harmed because the testimony made him
appear unaware about the level of his alcohol tolerance. Since the testimony that possibly
exceeded the jury's request was not excessive, we hold that Russell was not harmed by the
trial court's allowing the jury to review the testimony in issue. See generally Duncan v.
State, 454 S.W.2d 736, 739-40 (Tex. Crim. App. 1970). As a result, we overrule issue three.

Factual Sufficiency


 Issue four contends the evidence is factually insufficient to support the verdict. 
Russell argues that we should compare the strength of the testimony of his expert witness,
a toxicologist who attributed Russell's condition to symptoms of his diabetes, with the lack
of expertise possessed by the State's witnesses on diabetes and its effects. Russell further
argues that this comparison will show that the evidence did not prove beyond a reasonable
doubt that Russell "was intoxicated rather than suffering from his diabetic condition on the
night of his arrest." Russell concludes that the jury verdict finding him intoxicated is against
the great weight and preponderance of the evidence and manifestly unjust.

 In response, the State argues that the jury chose to place greater weight on the
testimony of the witnesses it found more credible, to reject the testimony of Russell's
toxicology expert, and to decide that Russell was "not suffering from hypoglycemia (1) on the
night of his arrest." The State concludes that the evidence in the record supports the jury's
verdict.

 First, we note the standard of review applied by appellate courts to factual sufficiency
challenges. "In a factual sufficiency review, the evidence is reviewed in a neutral light rather
than (as in a legal sufficiency review) in the light most favorable to the verdict." Roberts v.
State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). Evidence can be factually insufficient
if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and
manifestly unjust or, when the greater weight and preponderance of the contrary evidence
so outweighs the supporting evidence that the verdict is clearly wrong and manifestly unjust. 
Id. 

 A person commits an offense if the person is intoxicated while operating a motor
vehicle in a public place. Tex. Pen. Code Ann. § 49.04(a) (Vernon 2003). "Intoxicated,"
as defined in the statute for this offense, means: 

 (A) not having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of two or more of those substances, or any other substance into
the body; or


 (B) having an alcohol concentration of 0.08 or more.


Tex. Pen. Code Ann. § 49.01(2) (Vernon 2003). 


 The evidence in this case addressed whether Russell had the normal use of his mental
and physical faculties. Four witnesses testified during the guilt-innocence phase of the trial. 
The prosecution called two witnesses, Trooper Kristy Davis, and one of the jail's medics,
Randy Gagliano. On behalf of the defendant, Russell testified to his version of the events
before and after the arrest, and he also called a board-certified forensic toxicologist. 

 The testimony and videotaped observations of Trooper Davis support the jury findings
because this evidence reflects: (1) she found Russell passed out and slumped in his vehicle
while it was located on the road; (2) Trooper Davis noticed that when Russell awoke, he had
alcohol on his breath, red glossy eyes, and very slurred speech; she also noticed he had
wetted the front of his pants and appeared extremely unsteady on his feet; (3) on field
sobriety testing, Russell indicated he understood the instructions but then failed to follow the
instructions and consequently did not complete the various tests that Trooper Davis tried to
administer; (4) after being given warnings about the refusal to provide a breath specimen,
Russell refused to provide Trooper Davis with a breath specimen; (5) on inventorying
Russell's vehicle, Trooper Davis found five unopened beer bottles in a twelve pack; (6) on
being booked into jail, Russell denied that he had any medical problems or physical injuries
that needed immediate attention; (7) on observing Russell, Trooper Davis found none of the
clues that Russell was in a diabetic coma or insulin shock; and (8) Trooper Davis expressed
an opinion that Russell had lost the normal use of his physical faculties and was intoxicated. 
In addition, the videotape at the scene of the stop allowed the jury to observe Russell and
whether he had the normal use of his faculties, depicted Russell's declining the emergency
medical technician's request to test his blood sugar level, and showed that he told the EMT
that he was "okay." 

 The jury also heard evidence relevant to Russell's theory that his symptoms were
attributable to his diabetes, but its decision not to accept this testimony does not indicate that
its verdict was clearly wrong and manifestly unjust. Dr. Gary Wimbish, called by Russell to
testify as a forensic toxicologist, testified that when presented with a question of a person
who appears intoxicated, administering a blood alcohol test together with a blood glucose test
would definitively determine the cause of the person's symptoms. While Dr. Wimbish ruled
out intoxication as the cause of Russell's symptoms and testified that in his opinion Russell's
condition was related to his diabetes, Dr. Wimbish also indicated that his opinion was based
upon viewing the videotape of the arrest. Thus, the jury could choose to give Dr. Wimbish's
opinion little weight since his opinion was not based upon the type of test that would have
differentiated between the probable causes of Russell's symptoms. The jury also heard from
one of the jail's medics, Randy Gagliano, (2) who testified without objection that someone
could be mistaken for being intoxicated when the person was actually going through a
diabetic crisis.

 Nevertheless, there is factual support for the jury's verdict. The arresting officer's
observations of the typical signs associated with alcohol intoxication, combined with the
officer's opinion that Russell was intoxicated, provide sufficient support for a finding of
driving while intoxicated. See Whisenant v. State, 557 S.W.2d 102, 105 (Tex. Crim. App.
1977) (noting that the arresting officer observed that the defendant drove erratically, had a
strong smell of alcohol on his breath, appeared sleepy, and slurred his speech); see also
Henderson v. State, 29 S.W.3d 616, 622 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd)
(concluding that a police officer's testimony "that an individual is intoxicated is probative
evidence of intoxication"). Further, because the jury saw the videotape of the stop, it could
draw its own conclusions from observing Russell's behavior in deciding whether he appeared
intoxicated. See generally Vaughn v. State, 493 S.W.2d 524, 525 (Tex. Crim. App. 1972)
("It is elementary in Texas that one need not be an expert in order to express an opinion upon
whether a person he observes is intoxicated."). 

 In addition, the jury in this case could have inferred from Russell's refusal to take a
breath test that Russell believed he was intoxicated. See Gaddis v. State, 753 S.W.2d 396,
399 (Tex. Crim. App. 1988) (noting that "it was not improper to simply argue that appellant
refused [testing] because he was intoxicated"); Finley v. State, 809 S.W.2d 909, 913 (Tex.
App.-Houston [14th Dist.] 1991, pet. ref'd) (finding that a jury may consider refusal to
provide breath or blood samples as evidence of guilt); see also Tex. Transp. Code Ann. §
724.061 (Vernon 1999) ("A person's refusal of a request by an officer to submit to the taking
of a specimen of breath or blood, whether the refusal was express or the result of an
intentional failure to give the specimen, may be introduced into evidence at the person's
trial.").

 Determinations about the credibility of each witness and about whether to believe or
disbelieve any portion of a witness's testimony are left to the jury. Fuentes v. State, 991
S.W.2d 267, 271 (Tex. Crim. App. 1999); Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986). The jury may also draw reasonable inferences from basic facts to ultimate facts. 
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). When a jury is faced with
conflicting testimony, we presume it resolved the conflict in favor of the prevailing party. 
Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 

 Like any other of the witnesses, the jury was also free to accept any portions of
Russell's testimony concerning the events that led to his arrest. According to Russell, after
not eating anything all day, he drove to his son's home. Upon arriving there after ten o'clock
at night, he found that his son was not at home but his son's friends were there working on
their motorcycles and drinking beer. Russell testified that after drinking one beer, although
he was not feeling good, he made the decision to return to his home. As he was going home
he felt nauseous, was getting really shaky, and decided to pull off the road to call his sister
when he blacked out. According to Russell, he had no recollection of events until the next
day when he appeared at a bond hearing. Russell also denied having any recollection that
he had refused the Trooper's request for a breath test. From Russell's testimony, the jury
could reasonably conclude that Russell drank more than one beer at his son's home, left
despite having symptoms of intoxication, and passed out on the way home. 

 We conclude that the evidence is factually sufficient to support the jury's verdict that
Russell operated a motor vehicle in a public place while not having the normal use of his
mental and physical faculties by reason of the introduction of alcohol into his body. A
neutral review of the entire record does not demonstrate that the proof of guilt is so obviously
weak as to undermine confidence in the jury's determination, nor does it demonstrate that the
proof of guilt is greatly outweighed by contrary proof. We find the evidence factually
sufficient to support Russell's conviction and overrule issue four.

Admission of Inventory


 In issue five, Russell complains about the admission of Trooper Davis's inventory
report. The inventory report reflects that Russell's pickup contained five unopened beer
bottles from a twelve pack. Russell argues that the report was inadmissable as hearsay. See
Tex. R. Evid. 803 (providing twenty-four categories of evidence allowable as exceptions to
the hearsay rule but not including police reports as an exception). Russell contends that
admitting the report was harmful because it allowed the jury to question his claim that "he
had only consumed one beer on the evening of his arrest."

 The State argues that Officer Davis's inventory report contains her objective 
recordings of fact made while she conducted a routine and objective inventory of Russell's
pickup. The State relies on Pondexter v. State, 942 S.W.2d 577, 585 (Tex. Crim. App. 1996),
in which the Court of Criminal Appeals held the trial court did not err in admitting a
computer-generated record of property seized after the defendant allegedly committed a
capital murder. In Pondexter, the Court of Criminal Appeals stated:

 The reasons for the possible impairment of judgment are not implicated in
situations where officers are conducting routine business matters, such as the
recording of "objective observations." Cole v. State, 839 S.W.2d 798 (Tex.
Crim. App. 1990). Since this is a situation where the police officer was
performing his ordinary, routine, duties of recording the property that was
taken in and out of the property room, his observations, and notation should be
presumed reliable. 


Id.

 Russell argues that Pondexter is distinguishable and points out that the arresting
officer, and not other officers in a property room, created the inventory on his pickup. 
Russell also notes that the inventory report involved in his case was created at the scene of
his arrest, and not at the police station. Consequently, according to Russell, the inventory
report is not comparable to an ordinary police property-room inventory.

 We agree with Russell that the inventory is not sufficiently separate from the arresting
officer's investigation to avoid the application of Texas Rule of Evidence 803(8)(B). 
Explaining the rationale behind Rule 803(8)(B)'s restriction on the admission of police
reports, the Court of Criminal Appeals in Fischer v. State, 252 S.W.3d 375, 382-83 (Tex.
Crim. App. 2008), stated: "The reason for this exclusion is the inherently adversarial nature
of any on-the-scene or post hoc investigation of a criminal suspect."

 In this case, the inventory report on Russell's pickup was done by the arresting officer,
directly implicating Rule 803(8)(B)'s concern with the adversarial nature of the process. 
Further, the inventory was done at the scene by the arresting officer, which makes it difficult
to divorce the inventory from the police investigation. We hold that the inventory report on
Russell's pickup should have been excluded. 

 Nevertheless, we find the error harmless. In criminal cases involving claims of non-constitutional error, an appellate court must disregard any error that does not affect
substantial rights. Tex. R. App. P. 44.2(b). "Under that rule, an appellate court may not
reverse for non-constitutional error if the court, after examining the record as a whole, has
fair assurance that the error did not have a substantial and injurious effect or influence in
determining the jury's verdict." Garcia v. State, 126 S.W.3d 921, 927 (Tex. Crim. App.
2004). In assessing whether the jury was likely affected by the erroneous evidence, "the
appellate court should consider everything in the record, including any testimony or physical
evidence admitted for the jury's consideration, the nature of the evidence supporting the
verdict, the character of the alleged error and how it might be considered in connection with
other evidence in the case." Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). 
We may also consider "the jury instructions, the State's theory and any defensive theories,
closing arguments and even voir dire, if applicable." Id. at 355-56. Whether the State
emphasized the error is another factor, as is whether there was overwhelming evidence of
guilt. Id. at 356.

 After examining the record as a whole, we conclude the inventory report did not have
a substantial and injurious effect or influence on the jury's verdict. Just before the trial court
admitted the report into evidence, Trooper Davis testified:

 Q. When you inventoried the vehicle, what did you find in the Defendant's
vehicle?


 A. I found 5 unopened 12-ounce Miller Lite beer bottles that were in a 12-pack.


 Q. So did it appear to you that seven of the beers had already been
consumed.


 A. Yes.


There were no objections to this portion of Trooper Davis's testimony. Consequently, the
jury had already been introduced to the same information about the beer found in the pickup
as is contained in the report. Generally, improperly admitted evidence is rendered harmless
when other properly admitted or unobjected-to evidence is admitted to prove the same fact. 
Brooks v. State, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); Miranda v. State, 813 S.W.2d
724, 739 (Tex. App.-San Antonio 1991, pet. ref'd). 

 Additionally, Russell testified and did not deny that he had several unopened bottles
of beer in his truck. Thus, whether Russell had beer in his pickup was not hotly contested
and was proven by other properly admitted evidence. By considering the other testimony as
a whole, we conclude that the erroneously admitted evidence likely had no or only a slight
impact on the jury.

 There was also substantial evidence, even without the testimony about the unopened
beer, upon which the jury could reasonably rely to conclude that Russell was intoxicated. For
instance, the jury had the opportunity to view Russell's behavior after the stop, and to hear
his own testimony in which he admitted to drinking and then feeling a little nauseous before
leaving his son's home, after which he admitted that he became disoriented and blacked out. 
Thus, the other evidence of Russell's guilt was substantial. Motilla, 78 S.W.3d at 357
(recognizing that evidence of the defendant's guilt is a factor in harm analysis).

 Further, while briefly mentioning that Russell was found with five unopened beers in
his pickup, the prosecutor did not tie her comment to the inventory report. The prosecutor
also never directly mentioned the inventory report in her closing argument. See id. at 356
(recognizing that "whether the State emphasized the error can be a factor"). We conclude
that the inventory report was not a substantial factor in the jury's evaluation of whether
Russell was guilty of driving while intoxicated. Finally, Russell does not argue, and we find
nothing to indicate that the trial court considered the inventory report when it set Russell's
punishment.

 Based on the record as a whole, we are not persuaded that the inventory report had a
substantial effect, injured Russell, or improperly influenced the jury's verdict. Issue five is
overruled. Having overruled each of Russell's five issues, the verdict is affirmed.

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on February 12, 2009

Opinion Delivered May 13, 2009

Publish


Before Gaultney, Kreger, and Horton, JJ.
1. "[A]bnormal decrease of sugar in the blood[.]" Webster's Third New
International Dictionary 1115 (2002).
2. Gagliano was not the jail medic on duty the night that Russell was admitted to the
jail, and did not see or treat him.