NO. 07-09-00259-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 6, 2010

---

BETTY A. RIOS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

---

FROM THE COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;

NO. 2007-446,768; HONORABLE LARRY B. "RUSTY" LADD, JUDGE

---

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Betty Rios, appeals her conviction for misdemeanor driving while intoxicated.[1]  Her three-day sentence and $2,000.00 fine were suspended and she was placed on community supervision for twelve months.  We will affirm.

Factual and Procedural History

Brothers, Ruben and Eddie Lopez, lived next door to each other.  One night in August 2007, Ruben held an informal party.  Eddie was there and so was Ruben's then-

---

[1] See TEX. PENAL CODE ANN. § 49.04(a), (b) (Vernon 2003).

coworker, Robin Decker.  Decker had arrived at Ruben's house between ten and eleven o'clock that night and parked his pickup truck on the street, partially blocking the driveway[2] to the house that Eddie shared with appellant, his girlfriend.

As Decker and some other guests[3] were in Ruben's front yard having a few beers, Decker saw appellant drive her Camaro up to her and Eddie's residence next door.  She had not been at Ruben's party since Decker arrived, and there was no evidence as to her activities just prior to her arrival.  Despite the fact that Decker's truck was partially blocking her driveway, appellant pulled into her driveway without incident.  She was at her house for a short period of time then returned to her car to leave.  This time, she did not successfully maneuver around Decker's poorly-parked pickup truck.  She hit the truck, immediately pulled forward back into her driveway, got out of her car, and verbally expressed her frustration.

Decker approached Eddie, seeking his thoughts on what to do about the matter.  Decker testified, without objection, that, after some time, perhaps a few minutes, Eddie announced that he wanted "to get [appellant] in some trouble" and called the police to deal with the matter.  According to Decker, Officer Doak Funk of the Lubbock Police Department arrived approximately ten to fifteen minutes after Eddie called.  Decker testified that Funk arrived approximately twenty minutes after he first saw appellant pull into her driveway but conceded that it could have been a little more than twenty

---

[2] According to the officer who responded to the residence, Decker was issued a citation for having illegally parked his vehicle.

[3] Though it is unclear, the Lopez brothers may have been with Decker in the front yard.  No other attendee testified at trial.

2

minutes. Though Funk did not recall precisely how long it took him to arrive after being dispatched to the scene, he estimated that it took him two to three minutes.

When Funk arrived at appellant and Eddie's residence, appellant was standing in the front doorway of the house. She offered that she had not been drinking and admitted to having hit Decker's truck as she tried to back out of the driveway. According to Funk, appellant exhibited characteristic signs of intoxication: unsteady stance, slurred speech, and an odor of alcohol on her breath. He explained that she stumbled and nearly fell twice as she went to the car to get her identification and that, during the course of their conversation, she continued to have to lean on her car despite his instructions to not do so. Decker did not see appellant drink prior to her arrival at her house or while she was at her house before she attempted to depart.

Appellant refused to perform standardized field sobriety tests (FSTs) or provide a breath or blood sample and was arrested. She was charged with driving while intoxicated. A Lubbock County jury found her guilty of said offense and sentenced her to three days in the Lubbock County Jail and a fine of $2,000.00. Both the sentence and the fine were suspended, and appellant was placed on community supervision for twelve months. She timely appealed and now challenges the legal and factual sufficiency of the evidence to support her conviction. She maintains that the evidence was insufficient to show that she was intoxicated when she operated a motor vehicle.[4]

---

[4] Appellant cites McCafferty v. State, 748 S.W.2d 489 (Tex.App.—Houston [1st Dist.] 1988, no pet.), in support of her contention that the evidence is insufficient to sustain her conviction for driving while intoxicated. McCafferty, however, was decided under the "reasonable alternative hypothesis" paradigm previously applied in

3

Standards of Review

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

In assessing the factual sufficiency of the evidence, we must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the trier of fact's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. An appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that

circumstantial evidence cases. Id. at 491. The "reasonable alternative hypothesis" paradigm was later overruled by Geesa v. State, 820 S.W.2d 154, 161 (Tex.Crim.App. 1991). We now apply the same standard of review to both direct and circumstantial evidence cases, and on this basis, distinguish McCafferty and like cases from the instant case. See Chaloupka v. State, 20 S.W.3d 172, 175 (Tex.App.—Texarkana 2000, pet. ref'd).

appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). However, when a defendant's version of the facts conflicts with other evidence, we must recognize that it is the jury's prerogative to judge the credibility of the evidence and to ascribe the weight to be given to the evidence. See Jones v. State, 944 S.W.2d 642, 647–48 (Tex.Crim.App. 1996). A verdict is not manifestly unjust simply because the trier of fact resolved conflicting evidence in favor of the State. Roise v. State, 7 S.W.3d 225, 233 (Tex.App.—Austin 1999, pet. ref'd).

Analysis

To establish the offense of driving while intoxicated, the State must prove the defendant was intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a); Stoutner v. State, 36 S.W.3d 716, 721 (Tex.App.—Houston [1st Dist.] 2001, pet. ref'd). The Texas Penal Code defines "intoxicated" as (1) "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body," or (2) "having an alcohol concentration of 0.08 or more." TEX. PEN. CODE ANN. § 49.01(2) (Vernon 2003); Russell v. State, 290 S.W.3d 387, 396 (Tex.App.—Beaumont 2009, no pet.).

For the evidence to be sufficient to support a conviction for driving while intoxicated, the record must establish a temporal link between the defendant's intoxication and his or her driving. See Kuciemba v. State, 310 S.W.3d 460, 462 (Tex.Crim.App. 2010). That is, there must be some evidence of (1) how recently the vehicle had been driven, or (2) how much time had elapsed between the accident and

5

the arrival of police so as to furnish the jury with an informed basis for determining the relationship, if any, between the defendant's driving and his or her intoxication. Stoutner, 36 S.W.3d at 721; Weaver v. State, 721 S.W.2d 495, 498 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). Indications that the defendant was intoxicated when the police arrived do not, alone, establish that the defendant was intoxicated at the time the defendant was driving. Stoutner, 36 S.W.3d at 721. Absent evidence in the record to establish the time of the accident or the driving in a public place, the evidence is insufficient to show that the defendant drove while intoxicated. Id.

Evidence of Intoxication

Funk's observations of signs typically associated with alcohol intoxication, combined with his opinion that appellant was intoxicated, sufficiently support the jury's finding that appellant was intoxicated. See Russell, 290 S.W.3d at 397 (citing Whisenant v. State, 557 S.W.2d 102, 105 (Tex.Crim.App. 1977)); Henderson v. State, 29 S.W.3d 616, 622 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd). Further, the jury could have inferred from appellant's refusal to take a breath test that she believed she was intoxicated. See Russell, 290 S.W.3d at 397; see also TEX. TRANSP. CODE ANN. § 724.061 (Vernon 1999) (providing that refusal of request to submit to breath or blood test is admissible at trial); Bartlett v. State, 270 S.W.3d 147, 153 (Tex.Crim.App. 2008) (concluding that evidence of refusal to submit to breath test is relevant in DWI case as it "tends to show consciousness of guilt").

6

Based on evidence that appellant refused to submit to tests and exhibited slurred speech, an unsteady stance, and an odor of alcohol on her breath, a rational jury could have found beyond a reasonable doubt that appellant was intoxicated.

Evidence of Operation of Motor Vehicle

The evidence is legally sufficient to support the conclusion that appellant was intoxicated. Now, we look to the record for evidence that appellant operated a motor vehicle in a public place.

As a preliminary matter, we do not read the record to establish that appellant entered 38th Street as she backed out of the driveway and hit Decker's truck. A number of cases analyzing the temporal link between intoxication and driving deal with a collision of some variety. See, e.g., Kuciemba, 310 S.W.3d at 462 (concluding that "[b]eing intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident"); see also Stoutner, 36 S.W.3d at 721; Weaver, 721 S.W.2d at 498–99. While there was a collision here, the driving associated with the collision is not the instance of operating a motor vehicle that we will examine.[5] With respect to her driving out of the driveway, the record suggests that she never entered a public road. It appears that appellant hit the truck and then pulled back into the driveway, not having entered the road on account of

---

[5] The collision may be probative of appellant's intoxication at the time Funk arrived, but, on these facts, does not seem to be evidence of having operated a motor vehicle in a public place. Since there is sufficient evidence of appellant's intoxication apart from evidence relating to the collision, we need not consider or decide such matter here.

the illegally-parked truck. Consequently, we limit our discussion of the evidence of appellant's driving to evidence of appellant's driving prior to entering the driveway.

Such evidence comes from Decker who explains that he noticed appellant's Camaro turn onto 38th Street, "tires squealing a little bit, or something." He explained that the vehicle pulled into appellant's driveway and that appellant exited the vehicle as the driver. The record establishes that her house was located on 38th Street and that 38th Street is a public road. On cross-examination, Decker expressed his certainty that it was appellant whom he saw get out of the car as the driver. From this evidence, the jury could have reasonably concluded that appellant operated her car in a public place.

Temporal Link between Intoxication and Operation

Evidence of the precise time of an accident or of driving is not the indispensable element of the offense of driving while intoxicated. See Zavala v. State, 89 S.W.3d 134, 139 (Tex.App.—Corpus Christi 2002, no pet.). Such evidence is, in itself, not critical, except as it establishes the time during which the trier of fact must consider the defendant's state and determine whether, during that episode of driving, the defendant was intoxicated. Id. So, the State must present evidence of the time at which the defendant was driving so as "to furnish the jury with an informed basis for determining the relationship, if any, between the [defendant]'s driving and his intoxication, if proven." Id. (quoting Kennedy v. State, 797 S.W.2d 695, 697 (Tex.App.—Houston [1st Dist.] 1990, no pet.)). We must look for evidence that links appellant's driving and appellant's intoxication to determine the critical issue: whether there is evidence from which the trier of fact can conclude that, at the time of the driving in question, whenever that might be,

8

appellant was intoxicated.  See id.  We remain mindful that the jury may draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial.  See Hooper v. State, 214 S.W.3d 9, 15 (Tex.Crim.App. 2007).

Decker explained that appellant pulled into her driveway from 38th Street approximately twenty minutes prior to Funk's arrival and determination that appellant was intoxicated.  There is no other evidence of appellant having operated her vehicle in a public place that night.  Though Decker does concede that it could have been a little bit longer than twenty minutes, his testimony is some evidence of a temporal link between appellant's operation of a motor vehicle in a public place and her intoxication.  Though less clear, Funk's testimony also establishes an approximate time at which appellant was driving.  Funk estimated that he arrived at the residence within two to three minutes of the dispatch.  From this evidence, the jury could have found that appellant was intoxicated while she operated a motor vehicle in a public place.

Evidence Undermining the Verdict

Funk did not recall how long it took him to arrive at the scene.  Relying on his report, he estimated that it took him two to three minutes.  Funk's timeline, it appears, varies somewhat from Decker's testimony that ten to fifteen minutes elapsed between Eddie's phone call and Funk's arrival.  It is the jury's task to resolve such conflicts in evidence.  See Swearingen v. State, 101 S.W.3d 89, 97 (Tex.Crim.App. 2003).  This apparent inconsistency does not render the evidence factually insufficient.

We also note the apparently volatile context of the night's events.  Appellant mentioned during her recorded ride to the police station, and there was some testimony

at trial concerning, a protective order in effect against Eddie, perhaps as a result of an earlier domestic dispute although the details of any underlying incident are not clear from the record. We also learn from Decker that Eddie expressed his desire to get appellant in "some trouble," presumably as a form of retaliation against appellant. That testimony came in without objection, and the record is clear that it was Eddie, rather than the damaged truck's owner, Decker, who summoned police about the collision.

In addition to evidence of Eddie's nefarious scheme, we note that the DVD of appellant's stay in the DWI room contradicts Funk's description of appellant's stance, gait, and speech. For most of the five minutes recorded, appellant is seen standing steady and still. When, at Funk's direction, she walked over and bent down to pick up the warning form that she had intentionally dropped, she did so without evidence of unsteadiness and without any type of assistance. Funk had testified that she was stumbling and nearly fell twice during his conversation with her at the house. She maintained throughout her time in the DWI room that she was at her house and did nothing wrong. In doing so, she was obviously frustrated and highly emotional, but her speech remained mostly comprehensible. We add that appellant was able to maneuver around Decker's illegally-parked truck twenty minutes before Funk arrived, arguably an indication that she was not intoxicated when she pulled into her driveway.

So, the record reveals evidence that would suggest that appellant was not intoxicated when Funk arrived or, at least, not intoxicated to the degree that she was slurring her speech and falling down. Other evidence could be said to undermine the conclusion that she was intoxicated at the time she arrived in her driveway.

10

Nonetheless, we must afford due deference to the jury's verdict when its verdict is reasonably supported by the record. See Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). Again, it lies within the jury's exclusive province to reconcile conflicts, contradictions, and inconsistencies in the evidence. Swearingen, 101 S.W.3d at 97. That we may disagree with the verdict or may acknowledge that there is considerable evidence contrary to the verdict does not authorize us to set aside the jury's determination. See Watson, 204 S.W.3d at 417.

Based on evidence that appellant operated her motor vehicle on a public road approximately twenty minutes prior to having been deemed intoxicated, we conclude that a reasonable trier of fact could have found that appellant was intoxicated at the time she drove a motor vehicle in a public place and that the evidence of the same was not so weak or against the overwhelming weight of the evidence as to be manifestly unjust. See Ross, 133 S.W.3d at 620; see also Watson, 204 S.W.3d at 417. We, therefore, find the evidence both legally and factually sufficient to sustain appellant's conviction for driving while intoxicated and overrule appellant's issue.

Conclusion

Having overruled appellant's sole issue, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

.

Do not publish.

11