

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-13-00180-CR

WAYLAND TERRY GREEN                                                        APPELLANT

V.

THE STATE OF TEXAS                                                                STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Wayland Terry Green appeals his conviction for driving while intoxicated (DWI).  In one issue, Green argues that the evidence is insufficient to support the intoxication element of his conviction.  We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Nicholas Foster, a security officer working for a private security company at the gated Indian Harbor subdivision in Hood County, testified that at roughly 12:45 a.m. on February 26, 2012, he and fellow security officer Tad Taylor were "running radar" when they observed Green driving his truck thirteen miles an hour over the posted speed limit. Foster said that under the homeowners' association's rules, he is allowed to initiate traffic stops and write citations for traffic infractions. Thus, Foster initiated a traffic stop of Green's vehicle.

Upon stopping Green, Foster requested Green's driver's license and insurance card. Green obliged. As Foster returned to his security vehicle to write Green a ticket, Green exited his vehicle, approached Foster, and demanded that Green return his license and insurance card. Foster described Green's behavior as "confrontational" and "erratic." Foster also said that Green possessed "slurred" speech. All of this led Foster to surmise that Green was intoxicated. Foster said that this encounter spanned a few minutes. After Foster refused to return Green's license and insurance card, Green cursed at Foster, got back in his car, declared "I'm leaving," and then drove off.

Foster and Taylor followed him in their security vehicle to a residence inside the gated community. Foster and Taylor parked outside the residence and called the Sheriff's department for assistance. Roughly twenty minutes after

2

Foster pulled Green over, officers Joshua Lane and Paul Lilly responded to their call. Foster provided Lilly with a written statement of what he had observed.

Taylor testified that he remained in the security vehicle as Foster retrieved Green's license and insurance card. According to Taylor, after Foster returned to the security vehicle, Green got out of his truck, argued with Foster, then got back in his vehicle, and left. By Taylor's account, he had recorded in his notes that they contacted law officials because "[Green was] intoxicated, driving on the roadways, [and] possibly could be endangering traffic." Taylor also reported that Green "was uncooperative" and that he had "dr[iven] off without his license." Like Foster, Taylor testified that he observed Green go into the local residence and that he did not see Green again until the two officers arrived and Green came out of the residence to speak with one of them. Taylor also gave his written statement to the officers.

Hood County Sheriff's Office's Patrol Deputy Lane testified that he responded to a call that Indian Harbor's security had stopped an intoxicated driver but that the driver had driven off and entered an Indian Harbor residence. Lane said that he arrived at the residence at 1:03 a.m., and after speaking with Foster and Taylor to confirm that he was at the correct residence, he encountered the residence's owner, Lonnie Humphrey. Humphrey informed Lane that Green was inside. Humphrey and Lane approached the residence, Humphrey called for Green to come outside, and he did. Lane said that as he

3

spoke with Green, he observed that Green appeared "drowsy" and exhibited "slurred speech." Based on these observations, Lane testified that he believed Green to be intoxicated. Lane then observed that Green possessed an odor of alcoholic beverage about his person and that he gave contradicting statements regarding having driven while intoxicated as the security officers stopped him for speeding.

By Lane's account, Green told him that he left a bar and attempted to proceed to Humphrey's residence when Taylor and Foster stopped him for speeding. Green told Lane that the security officers had detained him for "roughly 45 minutes, so he drove off." When Lane inquired of Green how much he had to drink that night, Green responded, "one or two beers." Lane testified that Green told him the last drink he had that night was prior to driving to Indian Harbor. Although Green said he was not intoxicated, Green revealed to Lane that the reason he had left the bar and proceeded to Humphrey's house rather than his own was because "he knew he had too much to drink and . . . he wanted to get to [Humphrey's] house before he felt that he was [too] intoxicated [to drive]." Green refused Lane's request to participate in field-sobriety tests, declaring that he did not need to because he was on private property, but he again reiterated that "he did not need to be driving all the way to his house, so that's why he came to [Humphrey's house]." Lane said that at that time he placed Green under arrest for driving while intoxicated. After placing him under

4

arrest, Lane had both Taylor and Foster identify Green as the person they had stopped earlier.

After running Green's information, Lane determined that Green had at least two prior DWI offenses on his record. Lane took Green to the Hood County Jail, where he read Green the statutory DWI warnings, including the provision that refusal to submit to a breath or blood test would cause Green's license to be suspended, and asked if he would consent to a breath test. Green refused the test. Video footage of this exchange at the jail, including the statutory reading and Green's refusal to submit to testing, was played for the jury. Following his refusal, Lane took Green to the hospital to perform a blood draw. Because Green had continued to profess that he would refuse to give a blood sample, Lane requested that additional units meet him at the hospital. Lane eventually obtained Green's blood sample at 2:19 a.m. Green's blood-alcohol level registered a 0.198 grams of alcohol per 100 milliliters of blood, more than twice the legal limit. From there, Lane transported Green back to the jail.

Green called Humphrey to the stand in his defense. Humphrey testified that Green came to his house around midnight. According to Humphrey, Green was upset after having been stopped by Foster and Taylor. Humphrey also said that he saw the security officer's vehicle and approached it to question why they were there. Humphrey testified that one of the security officers informed him that they were awaiting the Sheriff to come out and investigate Green's behavior.

5

Humphrey said that he and Green decided they would sit on the front porch and drink beer until the police arrived. By Humphrey's account, he and Green consumed four or five beers while they waited and it took police an hour to arrive. Humphrey said that he did not believe Green was intoxicated when he arrived. When the State questioned Humphrey about where he and Green drank beers while awaiting the officers' arrival, he first stated emphatically that they were drinking on the front porch. But when the State prosecutor claimed that Lane's in-car video camera and microphone captured the encounter, including audio whereby Humphrey can be heard telling Lane that Green was "inside, sitting on the couch," Humphrey then said that he could not remember where he and Green were consuming beer. The State, however, never introduced the video from Lane's in-car camera nor the audio captured from his microphone.

The jury returned a verdict of guilty, and after stipulations regarding Green's prior record and his pleading true to the State's enhancement paragraphs, the jury assessed punishment at ninety-nine years' incarceration. The trial court entered judgment accordingly, and this appeal followed.

### III. DISCUSSION

In his sole issue, Green argues that the evidence is insufficient to support his conviction. Specifically, Green argues that "even viewing the evidence in a light favorable to the prosecution a rational trier of fact simply could not have

found the essential element of loss of use of normal physical or mental faculties by introduction of alcohol into [his] body." We disagree.

## A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex.

7

Crim. App. 2011). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

###### B. Law Regarding Intoxication

A person commits the offense of driving while intoxicated if he operates a motor vehicle in a public place while intoxicated. Tex. Penal Code Ann. § 49.04 (West 2008). Here, Green challenges only the evidence to support that he was intoxicated.

The definition of intoxicated, as it applies to this case, is "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body." Tex. Penal Code Ann. § 49.01(2)(A) (West 2011). As a general rule, the testimony of an officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication for the offense of DWI. *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979) (reasoning that an officer's testimony that a person was intoxicated provided sufficient evidence to establish the element of intoxication); *see also Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating that the testimony of a police officer that an individual is intoxicated is probative evidence of intoxication). Moreover, the observations of non-officer witnesses are relevant and probative of intoxication. *See Lopez v. State*, 279 S.W.3d 727, 729–30 (Tex. App.—Amarillo 2007, no pet.); *see also Martinez v.*

*State*, 155 S.W.3d 491, 496 (Tex. App.—San Antonio 2004, no pet.) ("To prove impairment, the State generally relies on eyewitness testimony.").

Additionally, evidence of intoxication may be proven by a combination of individual symptoms of intoxication that when taken individually do not necessarily prove intoxication. *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (noting that evidence of intoxication may include, among other things, slurred speech, bloodshot eyes, odor of alcohol, unsteady balance, and staggered gait). Furthermore, evidence of intoxication obtained near the time of driving is probative evidence the defendant was intoxicated while driving. *See State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005) (holding that results of breath test obtained ninety minutes after arrest probative of both impairment and per se prongs of driving while intoxicated offense); *Stewart v. State*, 129 S.W.3d 93, 97–98 (Tex. Crim. App. 2004) (holding that results of breath test obtained eighty minutes after arrest probative of both impairment and per se prongs of driving while intoxicated offense). And one's refusal to submit to a breath test demonstrates a consciousness of guilt that the person was in fact intoxicated. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (noting that a defendant's refusal to submit to a breath test is admissible under the transportation code as tending to show the defendant's consciousness of guilt).

## C.      Legally Sufficient Evidence of Intoxication

Here, viewing the evidence in the light most favorable to the jury's verdict, the record contains evidence from multiple witnesses that Green's behavior upon being pulled over by the security officers was erratic and confrontational and that Green possessed slurred speech.  Both security officers testified that they believed Green was intoxicated at the time of the stop.

Testimony by the arresting officer was that Green admitted to drinking alcohol prior to driving to Indian Harbor and that Green explained to the officer that the reason he drove there instead of to his home was because he was trying to get to Humphrey's house before his intoxication overtook his ability to drive. The arresting officer testified that roughly twenty minutes after the security officers stopped Green's vehicle, he appeared to be intoxicated due to slurred speech, drowsy appearance, the smell of alcoholic beverage, and contradictory statements as to his level of intoxication.

Green also refused to take a breath test at the jail even after being informed that his license would be suspended upon his refusal.  A video of his refusal was played for the jury.  And blood work taken less than two hours after the security officers first stopped Green demonstrated that his blood-alcohol level was more than twice the legal limit—0.198 grams of alcohol per 100 milliliters of blood.  Furthermore, the evidence indicates that the entire interaction between Green and the security officers, and ultimately the arresting officer, was born out

of Green's speeding in a residential neighborhood at roughly 12:45 a.m. *See Tex. Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 880 (Tex. App.—Fort Worth 2009, no pet.) (considering speeding as factor in determining whether officer had probable cause to arrest for driving while intoxicated).

Although Humphrey testified that he and Green consumed four to five beers during the period of time between Green's arrival at Humphrey's and the officers' arrival, and although Humphrey further testified that it was an hour before the officers arrived, Foster and Lane testified that the period of time between the security officers stopping Green and Lane's arrival was roughly twenty minutes. Moreover, Humphrey's testimony that he and Green sat on the front porch drinking beer while awaiting the officers' arrival was not only undermined by his ultimate admission that he could not remember exactly where he and Green were during this time; it also contradicts Taylor's direct testimony that Green went into Humphrey's residence and did not come back out until the officers arrived. Further undermining Humphrey's testimony that Green consumed beer during this time is Lane's testimony that Green expressed to Lane that Green had not drunk any alcohol since leaving the bar before driving to Indian Harbor. Lane also testified that Green was inside the residence when he arrived. We must presume that the factfinder resolved any conflicting inferences from these witnesses' testimony in favor of the verdict and defer to that resolution. *See Isassi*, 330 S.W.3d at 638.

11

We conclude that a rational trier of fact could have found the essential element of intoxication beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Wise*, 364 S.W.3d at 903; *see also Russell v. State*, 290 S.W.3d 387, 397 (Tex. App.—Beaumont 2009, no pet.) ("In addition, the jury in this case could have inferred from Russell's refusal to take a breath test that Russell believed he was intoxicated.").  Thus, we overrule Green's sole issue.

## IV. CONCLUSION

Having overruled Green's sole issue on appeal, we affirm the trial court's judgment.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 5, 2014