NO. 07-10-00152-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 11, 2012

_____

KANAYO EUGENE UBESIE, JR., APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE COUNTY COURT OF NAVARRO COUNTY;

NO. 61,354; HONORABLE JOHN JACKSON, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Kanayo Eugene Ubesie, Jr., appeals his conviction for DWI and resulting sentence of 180 days in the Navarro County Jail.[1] On appeal, he challenges the sufficiency of the evidence to sustain said conviction. We will affirm.

Factual and Procedural History

Best friends, appellant and Michael Migl, planned a trip from Arlington to Houston to visit family. The friends loaded up in appellant's car, but, before they embarked on their journey, they stopped by a pharmacy and picked up prescriptions. Appellant

_____

[1] See TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2011).

picked up Xanax, and Migl picked up both Xanax and codeine cough syrup. The two men ingested their respective remedies and then started down IH-45 toward Houston.

When the two were in Navarro County, appellant noted a problem with the front passenger-side tire. The wheels on appellant's car were equipped with locking lug nuts for security purposes. Apparently, when appellant first noticed the tire trouble, Migl had reached into the glove compartment and gotten the specialized lug nut security device that is necessary for the removal of the wheel. He put it in his pocket and, it seems, forgot that it was there or that he had even retrieved it from the glove compartment. Not realizing they had the security device, the two decided that they needed assistance.

Initially, appellant called AAA to seek assistance but learned that the wait would be longer than he found acceptable. So, he opted to call 911 for help. According to the 911 operator, appellant explained to her that they needed help with a flat tire and were located at or near exit 225 of southbound IH-45. Appellant's 911 call was disconnected for some reason, and the operator called him back shortly thereafter, at which time appellant informed her that the two men were at the Citgo gas station in Angus.

Trooper Jeffrey Taylor of the Texas Department of Public Safety was dispatched to the gas station at 8:31 p.m. and arrived there at 8:47 p.m., at which time he encountered appellant and Migl. Right away, Taylor noticed that both men exhibited slurred speech, unsteady gait, and confusion about the tool that was needed to fix the tire. He also noted that both men's eyes were very nearly closed. Though Taylor admitted that both men were very difficult to understand, appellant consistently answered that he was the driver of the vehicle and had driven to the gas station.

2

Taylor's investigation confirmed that the car belonged to appellant or appellant's father. After speaking to the men and observing them for only a few minutes, Taylor knew that "something just wasn't right." He reported to dispatch that the two were doing "weird stuff" and "not making any sense," and he surmised that "these guys are high as hell."

They asked Taylor if they might borrow a jack from him. They also asked several passing patrons for various tools. After Taylor explained that the two did not need a jack, that they already had a jack, but needed the security adaptor device for the lug nut instead, the two wandered off in an adjoining vacant lot and began looking for the adaptor.

Sensing that further investigation was warranted, Taylor went inside to speak to the station attendant for a few minutes, and, when he returned to the two young men, the two had gotten back into the car and told Taylor that they were going to go to another gas station to seek help for their flat tire. Taylor noticed that the two were prepared to leave without the various tools they had amassed in an attempt to fix the tire and also expressed to them his concerns over the safety of driving the vehicle when the tire was down to the rim of the wheel. The two reassured him that they had already spoken to another trooper about their predicament and that all was well, not realizing that Taylor was, in fact, the same trooper to whom they had spoken only minutes earlier.

At one point, Taylor asked appellant if everything was all right, and appellant explained that his friend was messed up. Based on his observation of their peculiar behavior, Taylor administered field sobriety tests (FSTs) to both men, who both failed.

Based on their poor performances on the FSTs, both men were arrested: appellant for DWI and Migl for public intoxication.

Appellant was convicted of DWI, and, after occasioning much delay in the appellate process, brings to this Court two points of error, only one of which presents a viable issue: the sufficiency of the evidence of a temporal link between his operation of the motor vehicle and his intoxication.[2]

## Certification of Right to Appeal

As a preliminary matter, we note that the trial court's certification of appellant's right to appeal showed that this case was not plea-bargained and that appellant had the right to appeal. However, because the certification did not include a notice that appellant had been informed of his rights concerning appeal and his right to file a *pro se* petition for discretionary review, this Court remanded the cause to the trial court requesting a corrected certification. See TEX. R. APP. P. 25.2(d), 37.1. The trial court entered findings of fact and conclusions of law which included a finding that, even though "the defendant and his attorney were individually noticed of the hearing [to correct the defective certification]," "neither the defendant nor any defense or appellate counsel appeared." That said, this Court utilized Rule 37.1 in an effort to obtain a corrected certification but did not receive a certification which included the required admonishments. See TEX. R. APP. P. 37.1; Dears v. State, 154 S.W.3d 610, 615 (Tex.Crim.App. 2005). Nonetheless, because the certification in the record before us

---

[2] Appellant challenges the legal and factual sufficiency of the evidence to sustain his conviction even though the Texas Court of Criminal Appeals eliminated factual sufficiency review over ten months prior to the date appellant's brief was filed. See Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010).

indicates that appellant has the right to appeal and this indication is supported by the record, we will proceed to address the merits of appellant's appeal. See Menefee v. State, 287 S.W.3d 9, 12 n.12 (Tex.Crim.App. 2009).

## Applicable Law and Standard of Review

To establish the offense of driving while intoxicated, the State must prove the defendant was intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a); Stoutner v. State, 36 S.W.3d 716, 721 (Tex.App.—Houston [1st Dist.] 2001, pet. ref'd) (op. on reh'g). The Texas Penal Code defines "intoxicated" as (1) "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body," or (2) "having an alcohol concentration of 0.08 or more." TEX. PENAL CODE ANN. § 49.01(2) (West 2011); Russell v. State, 290 S.W.3d 387, 396 (Tex.App.—Beaumont 2009, no pet.). Appellant was convicted of DWI under the "loss of normal faculties" definition of intoxicated. See TEX. PENAL CODE ANN. § 49.01(2)(A).

For the evidence to be sufficient to support a conviction for driving while intoxicated, the record must establish a temporal link between the defendant's intoxication and his or her driving. See Kuciemba v. State, 310 S.W.3d 460, 462 (Tex.Crim.App. 2010). That is, there must be some evidence of (1) how recently the vehicle had been driven or (2) how much time had elapsed between an accident and the arrival of police so as to furnish the jury with an informed basis for determining the relationship, if any, between the defendant's operation of the vehicle and his or her

intoxication. Stoutner, 36 S.W.3d at 721; Weaver v. State, 721 S.W.2d 495, 498 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). Indications that the defendant was intoxicated when the police arrived do not, alone, establish that the defendant was intoxicated at the time the defendant was driving. Stoutner, 36 S.W.3d at 721. Absent evidence in the record to establish the time of the accident or the driving in a public place, the evidence is insufficient to show that the defendant drove while intoxicated. Id. A conviction can be supported solely by circumstantial evidence. Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor," and "the standard of review on appeal is the same for both direct and circumstantial evidence cases." Id.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks, 323 S.W.3d at 912. "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." Brooks, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson." Id. When reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. See id. at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in Watson v. State, 204 S.W.3d 404, 448–50

6

(Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." Id. at 899.

Analysis

Evidence of Intoxication

Appellant does not appear to challenge the evidence that, at the time he was arrested, he was intoxicated within the meaning of Section 49.01(2)(A). Evidence of intoxication may include (1) slurred speech, (2) bloodshot eyes, (3) the odor of alcohol on the person, (4) the odor of alcohol on the breath, (5) unsteady balance, or (6) a staggered gait. Harris v. State, 204 S.W.3d 19, 25 (Tex.App.—Houston [14th Dist.] 2006, pet. ref'd). Circumstantial evidence of intoxication may also be shown by the manner in which an appellant managed his vehicle. See Kennemur v. State, 280 S.W.3d 305, 313 (Tex.App.—Amarillo 2008, pet. ref'd).

Though appellant does not appear to specifically challenge the evidence supporting his intoxication, he does point out that appellant's blood was not taken until a number of hours after Taylor first encountered the two men at the gas station. In response, we find it important to reiterate that the State alleged that appellant was intoxicated, within the meaning of the Texas Penal Code, by having lost the normal use of his mental or physical faculties. See TEX. PENAL CODE ANN. § 49.01(2)(A). Therefore, the State was not required to prove the exact level of the drug(s) in appellant's system at the time he was driving, only that appellant had driven while

7

having lost the normal use of his mental or physical faculties. See Jackson v. State, 50 S.W.3d 579, 587–88 (Tex.App.—Fort Worth 2001, pet. ref'd); see also TEX. PENAL CODE ANN. § 49.01(2)(A). With that in mind, the fact that appellant's blood was drawn hours after Taylor's initial encounter with the two young men is of little value in our analysis here, other than indentifying the drugs the introduction of which led to appellant's loss of his normal use of his mental or physical faculties. In terms of the intoxication element, the State was called to prove merely that Appellant lost the normal use of his mental or physical faculties.

Temporal Link between Intoxication and Operation of Motor Vehicle

Evidence of the precise time of an accident or of driving is not the indispensable element of the offense of driving while intoxicated. See Zavala v. State, 89 S.W.3d 134, 139 (Tex.App.—Corpus Christi 2002, no pet.). Such evidence is, in itself, not critical, except as it establishes the time during which the trier of fact must consider the defendant's state and determine whether, during that episode of driving, the defendant was intoxicated. Id. So, the State must present evidence of the time at which the defendant was driving so as "to furnish the jury with an informed basis for determining the relationship, if any, between the [defendant]'s driving and his intoxication, if proven." Id. (quoting Kennedy v. State, 797 S.W.2d 695, 697 (Tex.App.—Houston [1st Dist.] 1990, no pet.)). We must look for evidence that links appellant's driving and appellant's intoxication to determine the critical issue: whether there is evidence from which the trier of fact can conclude that, at the time of the driving in question, whenever that might be, appellant was intoxicated. See id. We remain mindful that the jury may draw multiple

8

reasonable inferences as long as each inference is supported by the evidence presented at trial. See Hooper v. State, 214 S.W.3d 9, 15 (Tex.Crim.App. 2007).

Appellant anchors his contention on the premise that he was already at the gas station at the time of his call to 911 and that, therefore, the State failed to prove that he operated his vehicle after he made the 911 call. First, his premise is contrary to record evidence indicating that appellant called 911 from the interstate and then proceeded to the gas station before the 911 operator called back or during this second exchange with the 911 operator, which lasted several minutes.[3] Secondly, though appellant makes much over his location and whether he operated a vehicle after he first called 911, we do not find it necessary to rely on this beginning point for a timeline. Regardless of whether appellant drove after he called 911, appellant indicated that he was driving the vehicle at or immediately before the time he made the 911 call. He also identified himself as the driver to Trooper Taylor several times at the gas station.

We also have uncontroverted testimony from Migl that appellant was driving that night and that Migl never once got behind the wheel. That said, regardless of the evidence appellant claims as suggesting that appellant was already at the gas station

_____

[3] Migl's testimony regarding the sequence of that night's events suggests that appellant made the 911 call from the interstate and proceeded to the gas station and arrived there at about the time the 911 operator called appellant back, all of which the jury was free to believe and all of which is consistent with the 911 operator's testimony regarding the content of the call, the road noise she heard, and appellant's announcement, when she returned his call, that the two were at the gas station. To the extent other record evidence conflicts with Migl's and the 911 operator's testimony, it lies within the jury's exclusive province to resolve such conflicts, contradictions, and inconsistencies in evidence. See Bowden v. State, 628 S.W.2d 782, 784 (Tex.Crim.App. 1982) (op. on reh'g). And we must afford due deference to the jury's verdict when its verdict is reasonably supported by the record. See Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006).

when he called 911 (and, therefore, as his argument goes, did not operate the vehicle *after* the 911 call), we have uncontroverted evidence that appellant was the driver of the vehicle at or very shortly before the time at which he made the 911 call: 8:23 pm. The record shows that Taylor arrived at the gas station and first encountered appellant and Migl at 8:47 pm. So, the evidence links appellant's operation of a motor vehicle around 8:23 and his intoxication–his loss of normal mental or physical faculties–when Taylor arrived twenty-four minutes later and noted that "something just wasn't right" with appellant, who was confused, stumbling, slurring his speech, behaving in a bizarre manner, and barely able to keep his eyes open. This temporal link between operation and intoxication is sufficient evidence upon which the jury could have reasonably found beyond a reasonable doubt that appellant was intoxicated *while operating* a motor vehicle.[4] Accordingly, we overrule his issue.

Conclusion

Having overruled the sole viable issue appellant has presented for our review, we affirm the trial court's judgment of conviction.

Mackey K. Hancock
Justice

Publish.

---

[4] Further, we note that the record establishes that appellant and Migl got into the car and were prepared to leave when Taylor returned to the car from speaking with the gas station clerk. Taylor testified that appellant had started the car in furtherance of their goal of getting to the next gas station and seeking help there. Shortly after Taylor convinced them not to undertake that mission, he administered FSTs, which both men failed. So, the record may provide a further link between appellant's operation of the vehicle at that time to his intoxication as demonstrated not only by his strange behavior but also by his poor performance on the FSTs shortly thereafter.