

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00235-CR

KATHERINE ROGERS                                                        APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In two points Katherine Rogers challenges the sufficiency of the evidence to support her conviction by a jury for driving while intoxicated. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App.) (stating law that issue complaining of trial

---

[1]*See* Tex. R. App. P. 47.4.

court's refusal to grant directed verdict is challenge to sufficiency of the evidence to support conviction), *cert. denied*, 540 U.S. 1051 (2003). We affirm.

## Background

Lauren Rodwell testified that she and her boyfriend Tim Munderloh arrived at Frankie's Bar and Grill a little before 5:00 p.m. on Super Bowl Sunday 2012. They "ate some food, . . . drank," and watched the pregame and game. Throughout the day, Lauren probably consumed "at least" three or four draft beers and "at least" two shots. She volunteered to be the designated driver for the couple.

Lauren met appellant at Frankie's because appellant and her boyfriend were with a large group of people that Lauren and Tim were mingling with. Lauren and Tim, and appellant and her boyfriend, stayed after the game and talked. Lauren had stopped drinking because she would be driving. Lauren "didn't notice whether [appellant and her boyfriend] were or were not drinking," but she knew that Tim was drinking because he had her permission to do so. According to Lauren, she "couldn't really say up to what point everyone else was drinking still. We had separate tabs, so I was concerned about ours." Although on direct Lauren testified that she was "pretty sure" appellant had drunk a shot that night, she admitted on cross-examination that she really did not know because she was not watching appellant.

Lauren testified that she and Tim left Frankie's around the same time as appellant, which was around 10:45 or 11:00 p.m. As Lauren was driving home

2

with Tim, she noticed a car stopped in the roadway about a mile or less from the bar. As they got closer, the car started to roll back as if the driver was "accidentally backing up or something," but the reverse lights were not on. Lauren described what she saw as follows: "I would kind of describe it like . . . if you've ever driven a five-speed car and . . . say the clutch is out and you . . . take your foot off the brake, it will roll backwards." The driver stopped the car before it hit Lauren and Tim's truck, and Lauren stopped the truck to help.

Lauren testified that appellant got out of the driver's side of the car and that she did not see anyone else in the car. Appellant said, "My car's just not working. I don't know what's wrong." At this time, both vehicles were blocking the roadway, cars were backing up behind them, and the drivers were becoming agitated. So Lauren invited appellant to sit in the truck with her. Lauren could not tell if appellant was "tipsy"; she did not have that much interaction with appellant in the truck.

Meanwhile, Tim had tried to start appellant's car and could not get it started. He worked on the car no more than ten minutes, but it could have been five. Another man stopped to help Tim push the car out of the way. Lauren then moved the truck behind the car. During this time, appellant was talking on her cell phone. She was distraught and upset; Lauren presumed it was because appellant's car was not working, and the traffic situation was stressful. Tim decided to call AAA to tow the car.

3

Lauren testified that a AAA driver arrived around fifteen to thirty minutes after Tim called. She could not remember exactly, but she did remember that the AAA driver arrived more quickly than when they had called AAA in the past. According to Lauren, a police officer arrived about ten to fifteen minutes after the AAA driver, who had just managed to start appellant's car. That officer questioned her and Tim both together and separately. When the officer was questioning Lauren separately, he asked her if appellant had been driving the car and she said, "Yes." She also told him that appellant was alone. The officer also asked Lauren if she had been drinking, and she admitted she had been. He also gave Lauren field sobriety tests, which she passed. Because according to Lauren, Tim "was . . . obviously pretty intoxicated," the officer let Lauren drive him home. At some point while Lauren and Tim were being questioned, another officer arrived, and he questioned appellant.

On cross-examination, Lauren testified that she thought about thirty to forty-five minutes had elapsed between the time she and Tim first encountered appellant on the roadway and the time the AAA driver arrived.

Tim testified that he had drunk "a lot more" than Lauren that night. He said that he and Lauren met appellant as part of a larger group and that he did not have much interaction with appellant. Thus, he had no idea how much she had drunk. Tim had drunk about ten beers. Tim thought that he and Lauren left Frankie's around 11:00 p.m., but they could have left as early as 10:30 p.m.

4

They "headed for the exit" around the same time as appellant, but he is not sure if they went out the door together.

According to Tim, when he and Lauren first saw appellant's car, it was stopped ahead of them, and as they approached it, it had died and started rolling backward. Appellant got out of the driver's seat. Tim said he "tinkered" with the car for less than ten minutes and then decided to call AAA. He estimated that it took him and another man who stopped about five minutes to push the car out of the roadway. He also estimated that the AAA driver arrived in about thirty to forty minutes and that the police "rolled up right about that time" and began questioning him. He also thought that it could be reasonable to conclude that appellant may have sat in the truck for forty-five minutes.

Christopher Clements, a City of Lewisville police officer, testified that around 11:30 p.m., he responded to a call about a disabled vehicle in a lane of traffic; Officer Seiuli Gordon had already responded. When Officer Clements arrived, he saw a black car stopped close to the line but not in the roadway, with a white pickup behind it. Officer Clements met with Officer Gordon and then with the driver of the car, whom he identified as appellant.

Appellant told Officer Clements that her car had just quit working. As Officer Clements was talking to appellant, he smelled a strong odor "of alcoholic beverage coming from her breath." He also noticed that appellant had slurred speech and glassy eyes. Appellant told Officer Clements that she had left the bar, was trying to go home, and that she was alone; thus, he determined that she

5

had been driving. Appellant told him that she had left Frankie's about forty-five minutes before he arrived and had drunk about four or five Bud Lite 12 ounce bottles. According to Officer Clements, appellant told him that she had her last drink "two [h]ours prior and that she started drinking a couple hours ago."

Officer Clements testified at length about the field sobriety tests he administered appellant: she failed the HGN test, exhibiting six of six clues; failed the walk-and-turn test, exhibiting six of eight clues; and also failed the one-leg-stand test, exhibiting three of four clues. Accordingly, Officer Clements arrested appellant for DWI.

When asked how he knew appellant had been intoxicated when she was driving, Officer Clements testified without objection that "people don't instantly become intoxicated. Also [it] takes people time to eliminate the alcohol from their body. So once they become intoxicated, it takes, again, time for that alcohol to eliminate from the body, to become sober and not intoxicated." Appellant refused consent to a breath or blood test and would not sign the statutory warnings. The State played video taken from both officers' cars.

While Officer Clements was testifying, appellant moved for a directed verdict, contending that the State had not brought forward evidence that appellant was intoxicated at time she was driving. The trial judge indicated that he would have suppressed a breath or blood test if it had been taken because he had "serious doubts" as to whether Officer Clements had probable cause for an

6

arrest, but he nevertheless thought that there was evidence that could be presented to the jury as to the intoxication issue.

Officer Gordon testified without objection that when he talked to Lauren and Tim, "[t]hey had mentioned that the driver of the smaller car, the female that they had met previously that night, seemed very intoxicated, also." He confirmed that he performed field sobriety tests with Lauren and released her afterward.

**Analysis**

Appellant was charged with being "intoxicated while operating a motor vehicle in a public place" by "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body." Tex. Penal Code Ann. § 49.01(2)(A) (West 2011), § 49.04(a) (West Supp. 2013). Her sole argument on appeal is that the evidence presented to the jury is insufficient to prove that she was intoxicated when she was driving her car, specifically because there is no evidence about driving facts at the time her car stalled to support a conclusion that she was intoxicated at that time and because the State did not present testimony from a qualified expert regarding whether she could have been intoxicated at that time.

Appellant cites *Kuciemba v. State* for the proposition that for the evidence to be sufficient to support a conviction for driving while intoxicated, the record must establish a temporal link between the defendant's intoxication and his or her driving. 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). In that case, the court of criminal appeals concluded that there was some evidence that the defendant

had been intoxicated at the time of driving when a sheriff's deputy found him intoxicated after exiting a vehicle that had been involved in a single-vehicle rollover. *Id.* at 461–63. This circumstantial evidence was sufficient to establish a temporal link between Kuciemba's driving and intoxication even though there was no evidence of how much time had elapsed between the accident and the deputy's arrival. *See id.*

Here, however, there is evidence of the time that had elapsed between appellant's driving and her intoxication: around thirty to forty-five minutes and possibly up to an hour.[2] Therefore, we need not consider the absence of circumstantial evidence of driving facts to support a temporal link between appellant's driving and her intoxication.[3] *See Ubesie v. State*, 379 S.W.3d 371, 377 (Tex. App.—Amarillo 2012, no pet.) (holding that evidence was sufficient to prove intoxication at time of driving when twenty-four minutes had elapsed between time of driving and officer's observing signs of intoxication); *Campbell v.*

---

[2]Because the jury is the sole judge of the weight and credibility of the evidence, we must defer to its resolution of any conflicts and determine only whether any of its necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011). Thus, there is evidence to support an elapsed time of the lower range between thirty and forty-five minutes from appellant's driving to the evidence of her intoxication.

[3]For this reason, appellant's argument that the evidence is insufficient because the trial court concluded that Officer Clements would not have had probable cause to obtain a warrant for a blood or breath test because he did not observe suspicious driving facts is not persuasive.

8

*State*, No. 07-10-00333-CR, 2012 WL 833744, at *2 (Tex. App.—Amarillo Mar. 13, 2012, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient to prove intoxication when thirty-eight to forty-five minutes had elapsed between time of driving and trooper's administration of field sobriety tests); *Guess v. State*, 419 S.W.3d 361, 366 (Tex. App.—Tyler 2010, pet. ref'd) (holding evidence sufficient to prove intoxication at time of driving when appellant told trooper he had been on the side of the road for an hour before becoming stuck in embankment) (mem. op.); *Stoutner v. State*, 36 S.W.3d 716, 721–22 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (op. on reh'g) (holding evidence sufficient when fifteen to twenty minutes had elapsed between time of driving and officer's observance of signs of intoxication); *Misner v. State*, No. 01-93-01015, 1994 WL 649099, at *2–3 (Tex. App.—Houston [1st Dist.] Nov. 17, 1994, no pet.) (not designated for publication) (holding evidence sufficient when appellant failed field sobriety tests forty-five minutes after accident); *Guerra v. State*, 846 S.W.2d 124, 126 (Tex. App.—Fort Worth 1993, no pet.) (holding evidence sufficient when thirty minutes or less had elapsed between time of driving and time appellant exhibited signs of intoxication); *cf. Weaver v. State*, 721 S.W.2d 495, 498–99 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (holding that absent any evidence fixing the time of driving, the evidence is insufficient to show that the defendant was intoxicated at the time of driving).

Appellant also relies on *McCafferty v. State*, 748 S.W.2d 489 (Tex. App.—Houston [1st Dist.] 1988, no pet.), as authority for her argument that the evidence

is insufficient, but because that case was decided under the now-defunct alternative reasonable hypothesis test of sufficiency, it is not apposite. *See, e.g.*, *Stoutner*, 36 S.W.3d at 722.

Here, there is no dispute that appellant was driving when her car stalled on the roadway. She admitted that she had drunk about four to five beers and had stopped drinking about an hour and fifteen minutes before she had been driving. When the officer arrived, appellant showed physical signs of intoxication and failed all field sobriety tests. Appellant also refused blood and breath tests, which can be considered as evidence of a consciousness of guilt. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008). Additionally, one of the officers testified that the witnesses he interviewed at the scene said that appellant seemed intoxicated. Accordingly, we conclude and hold that the evidence is sufficient to support appellant's conviction for driving while intoxicated.

We overrule both of appellant's points and affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 27, 2014

10