Opinion issued August 27, 2013



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-10-00871-CR

_____

**RICHARD STERLING PHILLIPS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 212th District**
**Galveston County, Texas**
**Trial Court Case No. 09CR1557**

---

## MEMORANDUM OPINION

Richard Sterling Phillips was convicted by a jury of the felony offense of driving while intoxicated.[1] Following the punishment hearing, the trial court

---

[1] Appellant stipulated to two prior misdemeanor DWI convictions.

sentenced appellant to six years' confinement, suspended imposition of the sentence and placed him on community supervision for a period of ten years, sentenced him to sixty days in county jail, and imposed several alcohol-related conditions to his community supervision. In three issues, appellant contends that the trial court erred in not granting a mistrial, and that the evidence was insufficient to support the judgment. We affirm.

## Background

In the early morning hours of September 20, 2008, Texas Department of Public Safety Trooper Stephen Culling was sitting with a DWI suspect in his patrol car on the shoulder of Interstate 45 North while he waited for the wrecker to tow the suspect's car. When he looked in his rearview mirror, Trooper Culling saw appellant's vehicle about fifty yards behind him splitting the lane of traffic and the shoulder. When he looked again, he noticed that appellant's vehicle was driving entirely on the shoulder and approaching his patrol car at approximately 40 miles an hour. Believing that appellant was about to hit his patrol car, Trooper Culling braced for impact.

Appellant steered around the patrol car and wrecker and continued northbound. Trooper Culling pulled off of the shoulder and began to pursue appellant, with his patrol lights activated. After appellant did not immediately pull

2

over, Trooper Culling blew his air horn but appellant still did not stop. After Trooper Culling turned his siren on, appellant eventually pulled over.

Trooper Culling instructed appellant to get out of his truck and go to the back of the vehicle. When Trooper Culling asked appellant if he had been drinking, appellant first replied that he had not but eventually admitted that he had had two shots fifteen minutes before the trooper stopped him, and that he had not eaten anything the previous day. Trooper Culling noticed that appellant smelled of alcohol, had bloodshot and glassy eyes, and that he spoke haltingly. Appellant said he was on his way to pick someone up in LaMarque. However, Trooper Culling testified that appellant had passed LaMarque and was heading in the wrong direction.

Appellant performed several sobriety tests which were videotaped by the patrol car's dashboard camera. Trooper Culling testified that he administered the horizontal gaze nystagmus (HGN) test to appellant. Appellant's counsel approached the bench, and the following exchange took place:

> TRIAL COUNSEL: Your Honor, my objection is I believe this Trooper is about to say that they can tell by a person's performance on field sobriety tests what their breath alcohol level would be, and the case number is Lorenzo v. State, and in short it says a peace officer may give qualitative but not quantitative results in field sobriety tests. So he is not able to say, because of this result, he would have blew [sic] this on a test; and I think he was headed down that road.

3

THE COURT: The court didn't hear him try to say that yet, but I'm going to direct counsel to ask your questions so that it specifically is not calculated –

THE STATE: We have no intent to.

THE COURT: The objection is sustained. Make sure you correct him.

THE STATE: Let me explain it.

Trooper Culling continued to testify about how the HGN test works. When the State asked him what he observed when he performed the test on appellant, Trooper Culling testified as follows:

I observed – as part of the evaluation of this test there are clues that we look for. There are six clues. As the test is evaluated, if the subject shows four clues, they are considered to be intoxicated by alcoholic beverage above .08.

Counsel objected and requested a mistrial. The trial court stated that it would instruct the jurors to disregard Trooper Culling's answer and gave the following instruction:

THE COURT: Members of the jury, at this time this court is going to direct you in the strongest language to disregard the last portion of the witness' answer. Any portion of that answer that referred to a number is to be disregarded by you. Is there anyone on this jury who feels that he or she cannot disregard that last part of the answer?

No juror raised a hand, and the trial court allowed the State to continue with its examination. Trooper Culling stated that appellant exhibited all six clues on the HGN test, indicating intoxication. Because appellant walked with a cane, Trooper

4

Culling did not administer the one-leg stand test or the walk-and-turn test. Trooper Culling testified that appellant did not follow his instructions on the finger-counting test[2] by failing to stop after two passes, and that appellant missed his third finger every time. Trooper Culling also stated that appellant did not follow instructions on the Rhomberg test[3] because he opened his eyes and stared at Trooper Culling at twenty-four seconds and then said "thirty" when he estimated thirty seconds had passed. According to Trooper Culling, appellant also swayed during the test.

Trooper Culling testified that when he asked appellant if he would take a portable breath test, appellant did not answer but instead responded that he used to be a police officer, that his father is a police officer who was about to receive a lifetime achievement award, and that appellant's house was just around the corner. According to Trooper Culling, appellant was very uncooperative, did not answer his questions, and answered questions he was not asked.

Based on his belief that appellant was intoxicated, Trooper Culling arrested appellant. At the police station, appellant refused to take a blood test. More than

---

[2] The finger-counting test requires a person to touch each finger to his thumb while counting from one to four and then back from four to one.

[3] The Rhomberg test requires the person to tilt his head back, close his eyes, estimate thirty seconds, and then say "stop."

an hour later, appellant requested that he be allowed to take the Intoxilyzer breath test while being videotaped; his request was denied.

Appellant testified at trial that he had sustained a knee injury and some memory loss due to a work-related accident six years earlier. He also testified that although he has not noticed a difference in his speech since the accident, it was possible that he takes longer to think about his answers. Appellant also stated that he was born with an eye condition that required him to have three surgeries as a child. According to appellant, he veered off the road before he was stopped because he was attempting to adjust the radio station in his truck and did not stop immediately because he was hoping the Trooper Culling was pursuing someone else, did not immediately realize that the trooper was trying to stop him, and panicked because he could still taste the shots in his mouth. Appellant stated that he missed a finger on the finger counting test because he has carpel tunnel syndrome, and that he opened his eyes during the Rhomberg test because he was agitated. He testified that he did not perform the portable breath test because it was inaccurate, he thought he had residual alcohol in his mouth from the shots, and he did not know whether the person who took the test before him had AIDS. Appellant stated that he refused the blood test because he has phlebitis. He testified that he never stumbled or swayed during the tests. He also stated that he

6

mentioned his dad to Trooper Culling because he thought using his father's name might influence the trooper to let him go.

At the conclusion of the trial, the jury found appellant guilty of felony DWI. After hearing testimony from appellant and several members of his family, the trial court sentenced appellant to six years' confinement, suspended for ten years, sixty days in county jail, and ordered several alcohol-related conditions. Appellant timely filed this appeal.

## Discussion

### A. Sufficiency of the Evidence

In his third issue, appellant contends that the evidence is insufficient to support the jury's verdict that he was intoxicated. The State argues that there was more than a modicum of evidence to support the judgment.

#### 1. Standard of Review

This Court reviews legal and factual sufficiency challenges using the same standard of review. *Kiffe v. State*, 361 S.W.3d 104, 107–08 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex.

7

Crim. App. 2009). Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *See Laster*, 275 S.W.3d at 518.

The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 918 n.33 (Tex. Crim. App. 2010). A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), *overruled on other grounds*, *Laster*, 275 S.W.3d at 516–17; *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding jury can choose to disbelieve witness even when witness's testimony is uncontradicted). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's determinations of credibility. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record

supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

## 2. Analysis

To establish that appellant committed the offense of driving while intoxicated due to alcohol, the State was required to prove that appellant was "intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2011). A person is intoxicated when he does not have "the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body." *Id.* § 49.01(2)(A). Driving while intoxicated is a third-degree felony if it is shown at trial that the defendant has previously been convicted "two times of any other offense relating to the operating of a motor vehicle while intoxicated . . . ." *Id.* § 49.09(b)(2).

In *Kirsch v. State*, the Court of Criminal Appeals stated that "evidence that would logically raise an inference that the defendant was intoxicated . . . includes, inter alia, erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, [and] any admissions by the defendant concerning what, when, and how much he had been drinking . . . ." 306 S.W.3d 738, 745 (Tex. Crim. App. 2010); *see Cotton v. State*, 686 S.W.2d 140, 142–43 & 142 n.3 (Tex. Crim. App. 1985) (identifying characteristics constituting evidence of

intoxication to include slurred speech, bloodshot or glassy eyes, unsteady balance, "staggering gait," and odor of alcohol on person or on her breath). Moreover, as a general rule, the testimony of a police officer regarding the defendant's behavior and the officer's opinion that the defendant is intoxicated provides sufficient support to uphold a jury verdict. *See Zill v. State*, 355 S.W.3d 778, 785–86 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The jury may also consider the defendant's refusal to submit a blood or breath specimen as evidence of intoxication. *See* TEX. TRANSP. CODE ANN. § 724.061 (West Supp. 2011); *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008) ("Evidence of the appellant's refusal to submit to a breath test is relevant for precisely the reason that the trial court identified in the contested jury instruction, namely, that it tends to show a consciousness of guilt on his part."); *Zill*, 355 S.W.3d at 786.

Here, Trooper Culling testified that appellant was driving on the shoulder of the freeway when he nearly hit the trooper's patrol car. He further testified that appellant did not pull over immediately and only stopped after Trooper Culling had activated his patrol lights, blown his air horn, and turned his siren on. When asked if he had been drinking, appellant admitted that he had had two shots fifteen minutes before the trooper stopped him, and that he had not eaten anything the previous day. Trooper Culling testified that appellant smelled of alcohol, that he had bloodshot and glassy eyes and a blank stare, and that he spoke haltingly.

10

Trooper Culling stated that although appellant told him that he was going to pick someone up in LaMarque, appellant had passed LaMarque and was heading in the wrong direction.

Trooper Culling testified that appellant exhibited six out of six clues on the HGN test. On the finger-counting test, appellant did not follow instructions to stop after two passes and missed his third finger every time. Trooper Culling also stated that appellant failed to follow instructions on the Rhomberg test and opened his eyes and stared at the trooper before thirty seconds had elapsed. Trooper Culling also noticed that appellant swayed during the test. Appellant refused to take the portable breath test or a blood test at the station. Trooper Culling testified that appellant was very uncooperative, did not answer his questions, and answered question he was not asked. The trooper also stated that appellant told him that he had been a police officer for twenty years and that his father was a police officer who was about to receive a lifetime achievement award. Trooper Culling testified that he believed that appellant was intoxicated.

Appellant contends that the evidence was insufficient to show he was intoxicated because he had only had two drinks which would have been out of his system by the time of the stop. However, appellant presented no expert retrograde

extrapolation testimony in this regard.[4]  He also contends that Trooper Culling wanted appellant to take the portable breath test—which appellant alleges is inaccurate and the results of which are not reviewable by a jury—so that the trooper could interpret the results as positive and appellant could not refute his testimony.  Appellant argues that Trooper Culling wanted him to take a blood test because he suspected appellant might also have taken drugs.  Notwithstanding appellant's belief as to Trooper Culling's motivations, the jury could consider appellant's refusal to submit a blood or breath specimen as evidence of his intoxication.  *See Bartlett*, 270 S.W.3d at 150.

Appellant further argues that Trooper Culling was determined that appellant fail all the field sobriety tests.  In support of this contention, appellant argues that Trooper Culling positioned appellant so that the video did not show him taking the finger-counting test, and the trooper concluded that appellant had failed the Rhomberg test even though he had accurately estimated thirty seconds.  As noted above, an officer's testimony that a defendant performed poorly on a field sobriety

---

[4]     "Retrograde extrapolation is the computation back in time of blood-alcohol level-that is, the estimation of the level at the time of driving based on a test result from some later time." *Mata v. State*, 46 S.W.3d 902, 908–09 (Tex. Crim. App. 2001). Following this procedure, an expert possessing sufficient information concerning such variables as an individual's weight, age, mental state, drinking pattern, type and amount of alcohol consumed, amount of food in the stomach, and the time period of alcohol consumption, can reliably estimate a person's blood-alcohol concentration at the time of driving. *See Kirsch v. State*, 306 S.W.3d 738, 744 n. 19 (Tex. Crim. App. 2010).

test and failed to follow directions is evidence raising an inference of intoxication. *See Kirsch*, 306 S.W.3d at 745 (listing "inability to perform field sobriety tests or follow directions" as evidence that raises inference of intoxication); *Finley v. State*, 809 S.W.2d 909, 913 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) ("Texas courts consistently uphold DWI convictions based upon the opinion testimony of police officers who observed the defendant's unsatisfactory performance in field sobriety tests.").

It is the province of the jury to decide conflicts in the evidence, and, in a sufficiency of the evidence review, we will not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the jury. *See Williams*, 235 S.W.3d at 750. We resolve all inconsistencies in the evidence in favor of the verdict. *Curry*, 30 S.W.3d at 406. Furthermore, even when there is no conflict in the evidence, "the jury may give no weight to some evidence, and thereby reject part or all of a witness' testimony." *Zill*, 355 S.W.3d 787. Although appellant offered various reasons for his erratic driving, his post-driving behavior, his inability to perform the sobriety tests, his refusal to take the portable breath test or a blood test, and his failure to follow directions, the jury was fully entitled to believe Trooper Culling's testimony that appellant was intoxicated and disbelieve appellant's alternative explanations for his behavior. *See id.* (noting that although defendant's behavior during traffic stop may have been consistent with head

13

injury, her behavior also constituted recognized evidence of intoxication); *Russell v. State*, 290 S.W.3d 387, 397 (Tex. App.—Beaumont 2009, no pet.) (holding evidence sufficient to support intoxication finding despite defendant's contention that his behavior and symptoms were caused by hypoglycemia and diabetes).

Viewing all of the evidence in the light most favorable to the jury's verdict, we hold that the evidence was sufficient for a rational fact finder to have found beyond a reasonable doubt that appellant was intoxicated by alcohol at the time he was stopped by Trooper Culling. We overrule appellant's third issue.

## B. Mistrial

In his first issue, appellant contends that the trial court erred in denying his motion for mistrial based upon Trooper Culling's testimony that when a driver exhibits four clues on the HGN test that means that the driver is intoxicated above .08 blood-alcohol content ("BAC") level. The State argues that the trooper's answer did not constitute a highly prejudicial and incurable error requiring mistrial.

### 1. Standard of Review

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of its ruling. *Wead v. State*, 129

14

S.W.3d 126, 129 (Tex. Crim. App. 2004). We uphold the ruling if it was within the zone of reasonable disagreement. *Id*.

### 2. Applicable Law

A mistrial is an appropriate remedy in extreme circumstances for a narrow class of highly prejudicial and incurable errors. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). The particular facts of the case determine whether an error requires a mistrial. *Id*. Because a mistrial is an extreme remedy, a trial court should grant it "only when residual prejudice remains" after less drastic alternatives are explored. *Bokemeyer v. State*, 355 S.W.3d 199, 202–03 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "Less drastic alternatives include instructing the jury 'to consider as evidence only the testimony and exhibits admitted through witnesses on the stand,' and, questioning the jury 'about the extent of any prejudice,' if instructions alone do not sufficiently cure the problem." *Ocon*, 284 S.W.3d at 885 (quotation omitted).

We generally consider instructions to the jury to be sufficient to cure most improprieties that occur during a trial. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). And, we presume that a jury will follow the judge's instructions. *Id*.; *see also Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App.

1998) (jury presumed to disregard parole during deliberation when so instructed); *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988) (jury presumed to follow instruction to disregard testimony regarding defendant's post-Miranda silence); *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987) (jury presumed to follow instruction after accomplice witness alluded to defendant's previous incarceration).

### 3. Analysis

Appellant complains of the following testimony by Trooper Culling:

> I observed – as part of the evaluation of this test there are clues that we look for. There are six clues. As the test is evaluated, if the subject shows four clues, they are considered to be intoxicated by alcoholic beverage above .08.

Appellant argues that the State deliberately elicited this testimony despite the trial court's prior ruling that Trooper Culling could not testify that appellant's performance on the sobriety tests indicated his BAC level. He argues that because this testimony was the State's only evidence regarding appellant's alcohol concentration, the trial court committed error in denying a mistrial. The State does not dispute that Trooper Culling's testimony that a person who shows four clues is considered to have a BAC level above .08 was impermissible. Rather, the State argues that this comment did not warrant a mistrial in light of the trial court's instruction to disregard and the overwhelming evidence of appellant's guilt.

16

In *Emerson v. State*, the Court of Criminal Appeals held that a peace officer may not correlate a defendant's BAC level with the defendant's performance on field sobriety tests. *See* 880 S.W.2d 759, 769 (Tex. Crim. App. 1994); *see also Smith v. State*, 65 S.W.3d 332, 345–48 (Tex. App.—Waco 2001, no pet.) (holding that trial court erred by allowing peace officer to testify, among other things, that defendant who had four clues on HGN would have BAC over .08 percent). In short, a peace officer may give qualitative, but not quantitative, results from field sobriety tests. *Youens v. State*, 988 S.W.2d 404, 406 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

We hold that the trial court did not abuse its discretion in denying appellant's request for a mistrial. On this record, the trial court reasonably could have concluded that the conduct did not establish an extreme circumstance warranting a mistrial. *See Hawkins*, 135 S.W.3d at 77. The objectionable comment was part of more than one hundred pages of testimony by Trooper Culling. The trial court immediately instructed the jury "in the strongest language to disregard the last portion of [Trooper Culling's] answer." The court then asked if any juror felt that he or she could not disregard the last part of the witness's answer, and no juror raised a hand. There is nothing to suggest that the trial court's instruction failed to remedy the situation. *See Bokemeyer*, 355 S.W.3d at 205 (concluding no indication existed that curative instructions failed to remedy situation where two

17

jurors disagreed with defense counsel regarding where trooper stood during traffic stop and prosecutor responded to jurors by giving them two thumbs up); *Ocon*, 284 S.W.3d at 883, 887 (finding no evidence showing curative instructions failed to remedy situation where juror had phone call in presence of another juror in which he described defendant as "bastard" and case as "dirty, disgusting"). Moreover, we presume that a jury will follow the judge's instructions. *See Gamboa*, 296 S.W.3d at 580 (jury presumed to follow instruction to disregard after family member of murder victim shouted in open court, "You did this for 200 dollars?"). In sum, there is nothing in the record indicating that the trooper's statement—particularly in light of the other evidence of appellant's intoxication—influenced the jury's decision as to whether appellant was driving while intoxicated. *See Robinson*, 851 S.W.2d at 230 (trial court did not abuse discretion in denying mistrial when juror received evidence outside record but did not share it with other jurors and said information would not influence her in reaching verdict). We overrule appellant's first issue.

## C. Jury Argument

In his second issue, appellant contends that the trial court erred in not granting a mistrial based on the State's improper jury argument. The State argues that appellant failed to obtain a ruling from the court. Alternatively, it argues that even if appellant had preserved error, the State's jury argument was permissible.

In its closing argument, the State argued, "Ladies and gentlemen, you know what the difference between a DWI and intoxicated manslaughter is?  Chance.  That's all it is."  Trial counsel objected, and counsel approached the bench.  However, trial counsel did not obtain a ruling on her objection.  *See* TEX. R. APP. P. 33.1(a)(2) (requiring that trial court rule on objection or that complaining party object to court's refusal to rule).  Having failed to pursue the objection to an adverse ruling, appellant failed to preserve his complaint for our review.  *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (concluding defendant's failure to object to jury argument or to pursue to adverse ruling his objection to jury argument forfeits his right to complain about argument on appeal).

However, even if appellant had preserved his complaint, the State's argument was not improper.  Jury argument by the State is generally considered permissible if it falls within one of the following categories: (1) summation of the evidence adduced at trial; (2) reasonable deductions from that evidence; (3) answer to argument of defense counsel; and (4) pleas for law enforcement.  *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).  The State is allowed wide latitude in drawing inferences from the evidence as long as the inferences are reasonable and offered in good faith.  *See Brown v. State*, 270 S.W.3d 564, 572 (Tex. Crim. App. 2008).  For reversal to be warranted, the

remarks must have constituted a willful and calculated effort to deprive appellant of a fair and impartial trial. *Id*. at 572–73.

Trooper Culling testified that he was sitting in his patrol car with a DWI suspect on the shoulder of the freeway when he saw appellant's vehicle in his rearview mirror about fifty yards away splitting the lane of traffic and the shoulder. When he looked again, appellant's vehicle was driving completely on the shoulder and approaching his patrol car at approximately forty miles an hour. Trooper Culling testified that he believed that appellant was about to hit his patrol car, and that he braced for impact. Based on this evidence and the evidence of appellant's intoxication, it is a reasonable deduction that appellant could have killed Trooper Culling and the DWI suspect had appellant not been able to veer back into his lane in time to avoid hitting the patrol car, and, if that had occurred, appellant might have been charged with intoxication manslaughter.[5] We overrule appellant's second issue.

## Conclusion

We affirm the trial court's judgment.

---

[5] A person commits the offense of intoxication manslaughter if the person (1) operates a motor vehicle in a public place, (2) is intoxicated, and (3) by reason of that intoxication, causes the death of another by accident or mistake. *See* TEX. PENAL CODE ANN. § 49.08(a)(1), (2) (West Supp. 2010).

Jim Sharp
Justice

Panel consists of Chief Justice Radack and Justices Sharp and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).